IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FATIMA ALSAADI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 04-1346 |
| | ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

### SYNOPSIS

The Commissioner of Social Security and the Claimant have filed Cross-Motions for Summary Judgment on the issue of whether the Administrative Law Judge's ("ALJ") decision denying benefits is supported by substantial evidence of record. I find that it is. The decision denying benefits is affirmed.

### OPINION

The Claimant Fatima Alsaadi ("Alsaadi") was born in Iraq. She married at the age of 13 and has six children. It does not appear as though she has ever worked While in Iraq , she apparently witnessed Iraqi policemen shoot and kill various family members. In 2000, she and her family fled to Jordan. She and her family then

entered the United States as refugees on or about August 16, 2001, sponsored by Catholic Charities.

As a refugee who has lived in the United States for less than five years, she is a "qualified alien" under the Personal Responsibility Act and is thus eligible for Supplemental Security Income ("SSI"). See 8 U.S.C. § 1611. Alsaadi filed an initial application for SSI on September 19, 2002 and a subsequent application on January 28, 2003. Alsaadi alleges that she is disabled due to asthma, diabetes, nephropathy, depression and post-traumatic stress disorder ("PTSD"). The application was denied. Following her request, an ALJ held a hearing on January 28, 2004. Alsaadi, via an interpreter, her husband and a vocational expert testified. The ALJ ultimately denied Alsaadi's request for benefits, finding that she had the residual functional capacity ("RFC") to perform a range of medium jobs.

Alsaadi has appealed. She contends that the ALJ's decision is not supported by substantial evidence of record. More specifically, Alsaadi urges first that the ALJ failed to properly consider the records from her treating physician and second that the ALJ's decision is predicated upon a defective hypothetical. For the reasons set forth below, I disagree.

## STANDARD OF REVIEW

The scope of review by this Court of an appeal from the Commissioner's decision is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. Richardson v. Perales, 402 U.S. 389

(1971); 42 U.S.C. § 405(g); Schaudeck v. Comm'r. of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, but equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. A single piece of evidence will not satisfy the substantiality test if the ALJ ignores or fails to resolve a conflict created by countervailing evidence. Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Monsour Medical Center v. Heckler, 806 F.2d 1190, 1195 (3d Cir. 1986), citing, 42 U.S.C. § 405. If the decision is supported by substantial evidence, I must affirm it, even if I would have decided the case differently. Bailey v. Apfel, CA 97-8908, 1998 U.S. Dist. LEXIS 10595 at * 2 (E.D. Pa. July 9, 1998) (citations omitted).

## ANALYSIS

In determining whether a claimant is eligible for disability insurance benefits or supplemental security income, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of impairments) which is so severe that he is unable to pursue substantial gainful employment currently existing in the national economy. 42 U.S.C. §§ 423(d)(1)(A) and (d)(2)(A). In addition, the impairment must be expected to result in death or to have lasted or be expected to last for not less than twelve months. 42 U.S.C. § 423(d)(1)(A);

Morales v. Apfel, 225 F.3d 310, 315-16 (3d Cir. 2000).

To determine the claimant's rights to either disability insurance benefits or supplemental security income benefits, the ALJ conducts the same five-step evaluation. If the claimant is working or doing substantial gainful activity, a finding of not disabled is directed and the analysis is completed. 20 C.F.R. § 404.1520(b), 416.920(b). In step two, the ALJ determines if the claimant suffers from "a severe impairment that significantly limits his or her ability to do basic work activity." Id., §§ 404.1520, 416.920. If so, and if that impairment meets or equals criteria for a listed impairment or impairments in Appendix of Subpart P of Part 404 of 20 C.F.R. and has lasted or is expected to last continually for at least twelve months, a finding of disability is directed at step three. Id., §§ 404.1520(d), 416.920(d). The ALJ then considers whether the claimant retains the residual functional capacity to perform past relevant work. Id., §§ 404.1520(e), 416.920(e). If not, the ALJ, taking into account the claimant's residual functional capacity, age, education, and past work experience, determines whether the claimant can perform other work that exists in the national economy. If the claimant can perform such other work, he is not disabled. Id., §§404.1520(f), 416.920(f). In all but the final step, the burden of proof is on the claimant. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); 42 U.S.C. §§ 416(1), 423(d)(1)(A).

Here, the ALJ found at the fifth step of the analytical process that Alsaadi retained the residual functional capacity to perform certain types of medium work. The ALJ made this determination after consultation with a vocational expert ("VE").

As stated above, Alsaadi contends that this conclusion is based upon the mischaracterization of treating source evidence and upon a defective hypothetical.

A. **TREATING SOURCE EVIDENCE**[1]

Alsaadi urges that the ALJ improperly discounted Dr. Ismael's records and opinions. According to Alsaadi, Dr. Ismael's records were entitled to more weight than that given by the ALJ both because he was the treating physician and because he was the only physician able to communicate directly with her without the aid of a translator. I disagree.

The ALJ clearly accepted Dr. Ismael's diagnoses of depression and PTSD. Yet Dr. Ismael's records largely contain only these diagnoses, they do not contain any information regarding the functional limitations caused by these conditions. He makes no mention of her ability to concentrate, or her ability to understand or remember, or her ability to carry out detailed instructions. Nor is such information forthcoming from the Mercy Behavioral Health records. Indeed, the only evidence of record explaining the impact of Alsaadi's mental conditions on her ability to work comes from Dr. Glover.

Dr. Glover concluded that Alsaadi had only mild restriction of activities of daily living. (R. 230). She had no repeated episodes of decompensation and had only "moderate" difficulties with respect to maintaining social functioning and in

---

[1] I note that in making this argument, Alsaadi speaks only of those medical sources who treated her for her mental condition. See Docket No. 9, p. 9-12. Thus, I understand Alsaadi's argument that the ALJ mischaracterized or improperly discounted the opinions of her treating physicians relates only to her psychiatric condition. She makes no mention of her diabetes, asthma or other physical conditions.

5

maintaining concentration, persistence and pace. (R. 230). She was generally assessed "not significantly limited" with respect to "understanding and memory," "sustained concentration and persistence," "social interaction" and "adaptation." She did, however, receive "moderately limited" with respect to the ability to understand and remember detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public and the ability to respond appropriately to changes in work settings. (R. 236). Because these are the only findings regarding the manner in which and the degree to which Alsaadi's mental impairments impact her ability to work, the ALJ did not err in relying upon them.

These findings are consistent, furthermore, with other evidence of record. For instance, the records indicate that, when compliant with her medicine regimen, Alsaadi becomes more socially interactive and her GAF score rises. Indeed, after being on a therapeutic dose of medicine for only a few weeks, her GAF score rose to 55. (R. 287). Alsaadi also reported feeling better following an adjustment to her medication. (R. 287). Dr. Lee from Mercy Behavioral and Health described Alsaadi's irritability and depression as "minimal" and her social isolation as "mild." (R. 212). Alsaadi was noted to be "independent" in her activities of daily living and daily chores. (R. 212). Dr. Roberts, her primary care physician, also commented that

Alsaadi had six children and was "busy at home." (R. 274). These findings belie Alsaadi's insistence that she is so disabled by her mental condition that she cannot carry-out activities of daily living. Alsaadi's credibility is also called into question by the fact that she claims to have been treated in Iraq for her mental condition, yet neither she nor her husband could identify the hospital at which she was treated or the physician who provided the treatment. Additionally, Alsaadi was unable to provide the INS forms which would have clarified and / or corroborated her claim of a prior history of depression and treatment. (R. 19).

Given the fact that Alsaadi's treating physicians did not offer any opinions or conclusions on how her mental impairments would affect her ability to work, the ALJ appropriately relied on the report of Dr. Glover, who reviewed Alsaadi's records and made that connection. Dr. Glover's opinion, and his conclusion that Alsaadi's credibility was questionable, is supported by other substantial evidence of record.

**B. HYPOTHETICAL**

Alsaadi also contends that the ALJ relied upon a flawed hypothetical which failed to accurately reflect her limitations as a whole. More specifically, Alsaadi contends that the hypothetical does not mention her depression, hallucinations or psychotic episodes. (Docket No. 9, p. 13). Yet, as stated above, Alsaadi's treating physicians never attributed any functional limitations to her mental condition. Contrary to Alsaadi's suggestion, neither Dr. Ismael nor Dr. Lee ever state that her conditions prevent her from performing jobs with a competitive production rate. The ALJ's conclusions regarding Alsaadi's mental impairments are, as stated above,

supported by substantial evidence of record.  Consequently, his decision not to mention any mental limitations in the hypothetical is appropriate.

*************************

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FATIMA ALSAADI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 04-1346 |
| | ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **19th** day of July 2005, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the decision of the ALJ denying benefits is affirmed. Consequently, the Plaintiff's Motion for Summary Judgment (Docket No. 8) is denied and the Defendant's Motion for Summary Judgment (Docket No. 10) is granted. Judgment is entered in favor of Defendant and against Plaintiff.

BY THE COURT:

S/Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge